IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROAMINGWOOD SEWER & WATER ASSOCIATION** | **CIVIL ACTION** |
| | **NO. 1:20-cv-00640** |
| **Plaintiff,** | |
| v. | |
| **NATIONAL DIVERSIFIED SALES, INC.** | |
| **Defendant** | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT, NATIONAL DIVERSIFIED SALES, INC., PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND 12(F)**

**I.    PROCEDURAL HISTORY OF CASE**

Plaintiff, Roamingwood Sewer & Water Association (hereinafter "Roamingwood"), filed the present action in this Court on April 17, 2020.  Defendant filed a Motion to Dismiss, prompting Plaintiff to file a First Amended Complaint on May 12, 2020.  Defendant, National Diversified Sales, Inc. (hereinafter "NDS") does not dispute the jurisdiction of this Court over this matter.

**II.    STATEMENT OF FACTS**

Plaintiff Roamingwood is seeking monetary relief in connection with damages allegedly sustained as a result of the failure of certain check valves manufactured by Defendant NDS that were used in a capital improvement project performed by Plaintiff in an existing master-planned residential community known as "The Hideout" located

in Wayne County, Pennsylvania. Plaintiff alleges that 800 check valves were installed on the project in Stage 3, and that 22 of these valves have failed in an identical fashion resulting in property damage, environmental concerns, and the need to dig-up and replace the failed check valves. Plaintiff alleges that the check valves have a uniform defect relating to the flapper mechanism in the valves.

### III.   STATEMENT OF QUESTIONS INVOLVED

1. Whether Paragraph 14 relating to the purchase price paid by NORMA Group for NDS in October 2014 should be stricken as immaterial, impertinent, and scandalous.

2. Whether Paragraph 32 relating to prior litigation involving Defendant should be stricken as immaterial, impertinent, and scandalous.

3. Whether Counts I (Strict Liability) and III (Negligence) should be dismissed based upon the Economic Loss Doctrine.

4. Whether Count IV for violation of the Unfair Trade Practices and Consumer Protection Law should be dismissed on the basis that the claims do not involve the purchase of "goods or services primarily for personal, family or household purposes" as required by Section 9.2(a) of the UTPCPL.

5. Whether all claims for replacement of all Stage 3 check valves should be dismissed as speculative.

### IV. ARGUMENT

#### A. Standard for a Motions Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f)

Federal Rule of Civil Procedure 12(b)(6) provides that a party may raise by motion the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences therefrom in favor of the plaintiff. *Armstrong Surgical Ctr., Inc. v. Armstrong County Mem'l Hosp.*, 185 F.3d 154, 155 (3d Cir. 1999). Because federal jurisdiction in the current case is premised upon diversity of citizenship, the Court should apply the substantive law of Pennsylvania in determining the legal sufficiency of the complaint. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).

Rule 12(f) of the Federal Rules of Civil Procedure authorizes a trial court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court should avoid striking material from pleadings unless it bears "'no possible relationship to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F.Supp.2d 404, 407 (W.D. Pa. 2011).

3

### B.     Motion to Strike Paragraphs 14 and 32

In Paragraph 14 of the First Amended Complaint, Plaintiff asserts that "NDS is a subsidiary of the NORMA Group SE, which acquired NDS in October 2014 for $285 million." The amount that may have been paid by the parent to NDS for the acquisition of the company bears no possible relationship to the present controversy and is unduly prejudicial or scandalous. This portion of Paragraph 14 should therefore be stricken.

In Paragraph 32 of the First Amended Complaint, Plaintiff asserts that NDS was on notice of "multiple failures of its check valve flapper failures" based upon prior litigation. Plaintiff references the case of *Postil v. National Diversified Sales, Inc.*, filed in Arizona as the basis for this assertion, a case in which Plaintiff has alleged that "NDS was previously found to be 100% negligent." However, that case involved a different type of alleged failure in a different part. The *Postil* case involved a swing check valve manufactured by Flo Control, Inc. (a company NDS later acquired), with model 1520-20. The alleged failure occurred as a result of environmental degradation and breakdown of the EPDM rubber of the flapper assembly. *See* Report of Vollmer-Gray Engineering from the *Postil* action, attached as Exhibit A. In contrast, Roamingwood has alleged that the failures of the NDS valves in this case occurred when the plastic pieces of the valve broke apart due to an incomplete ultrasonic weld of the two plastic pieces that comprised the flapper assembly. First Amended Complaint, ¶ 39. As such, there is no relevance of the failure of the Flo Control valve in the *Postil* case to the

alleged valve failures in the present case, and any reference to that litigation should be stricken.

### B. Motion to Dismiss Counts I and II based upon Economic Loss Doctrine

The Plaintiff has again pled claims for strict liability and negligence, but still claims only economic losses which are not recoverable on those tort theories. The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Plaintiff has not asserted claims in the First Amended Complaint for damages other than the same economic damages claimed in the original Complaint, and as such, the claims continue to be barred under Pennsylvania law.

The economic loss doctrine has its recent origin in Pennsylvania in the case of *Aikens v. Baltimore and Ohio Railroad Company*, 501 A.2d 277 (Pa. Super. 1985), in which employees of a plant damaged by a train derailment filed a lawsuit sounding in negligence against the railroad for lost wages. The Pennsylvania Superior Court held that "no cause of action exists for negligence that causes only economic loss." *Id.* at 279. The Court reasoned that "allowance of a cause of action for negligent interference with economic advantage would create an undue burden upon industrial freedom of action, and would create a disproportion between the large amount of damages that might be recovered and the extent of the defendant's fault." *Id.*

In the case of *Excavation Techs., Inc. v. Columbia Gas Co. of Pa*, 985 A.2d 840, (Pa. 2009), the Pennsylvania Supreme Court considered the application of the economic loss doctrine to a situation where a contractor sustained purely economic losses during excavation work as a result of the defendant's failure to properly mark its lines. The Court found that the claim sounding in tort was for purely economic loss only, thus barring the claim for damages. The Court refused to extend its prior decision in *Bilt-Rite Contractors v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005), in which it had carved out a limited exception to the economic loss doctrine where a contractor had sustained a purely economic loss based upon its reliance on defective drawings by a design professional.

More recently, in the case of *Longenecker-Wells v. Benecard Services, Inc.,* No. 15-3538 (3d Cir. 2016), a non-precedential decision arising out of this Court, the Third Circuit Court of Appeals affirmed the grant of the defendant's 12(b)(6) motion on the basis that plaintiff's tort claims were barred by the economic loss doctrine. Plaintiffs asserted damages as a result of a data breach that permitted unknown third-parties to access plaintiffs' personal information and file fraudulent tax returns under plaintiffs' names. The Court rejected plaintiffs' argument that the doctrine applies only in cases where the source of the duty plaintiff seeks to enforce arises from a contract and only in instances where the harm suffered is limited to economic loss arising from the interference with contractual expectation.

The Court in *Longenecker* premised its ruling on both the *Excavation Techs* decision and its own prior rulings in *Azur v. Chase Bank*, 601 F.3d 212, 223 (3d Cir. 2010), and *Sovereign Bank v. BJ's Wholesale Club*, 533 F.3d 162, 180 (3d Cir. 2008). In its decision in *Azur,* the Third Circuit Court of Appeals rejected the plaintiff's argument that the economic loss doctrine does not apply where the plaintiff lacks a contractual remedy to recover its economic losses.  In the *Sovereign Bank* case, the Court also rejected arguments put forth by the plaintiff-bank that the economic loss doctrine did not apply because (1) Sovereign lost "real and concrete property," i.e., its money; and (2) the doctrine only applies to unforeseeable losses.

The Pennsylvania Supreme Court's recent ruling in the case of *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), does not warrant a different outcome.  Therein, the Court sought to clarify its prior rulings in *Excavation Techs* and *Bilt-Rite Contractors*. In *Dittman*, the Court held that the economic loss doctrine does not apply where "the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Id.,* at 1038.

Economic loss has been defined as "damage for inadequate value, costs of repair and replacement of defective product, consequential loss of property, without any claim of personal injury or damage to other property." *Am. Stores Props. v. Spotts, Inc.*, 648 F. Supp. 2d 707, 712-13 (E.D. Pa. 2009) . "Other property" has been defined as "property other than the project which is the basis of the bargain of the contract.*"*

*Developers Sur. & Indem. Co. v. Mathias*, No. 12-2216, 2013 U.S. Dist. LEXIS 173973, at *21 (M.D. Pa. Dec. 11, 2013); *see also Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.*, No. 00-2231, 2002 U.S. Dist. LEXIS 4609, at *13-16 (E.D. Pa. Mar. 18, 2002) (holding that damage to the building that was the basis of the bargain with the defendant did not constitute damage to other property).

In the present case, Plaintiff Roamingwood is seeking purely economic damages as a result of alleged failures of the check valves manufactured by NDS. As demonstrated by the claims for breach of warranty asserted by Roamingwood in its First Amended Complaint, the nature of the relationship between the parties is based in contract, i.e., the purchase by Roamingwood of check valves manufactured by NDS. As a result of a breach of the contractual relationship, Roamingwood is seeking the costs incurred in replacing failed check valves, as well as its costs in connection with claims by homeowners resulting from check valve failures. While the latter claims may be the result of damage to property, Roamingwood is not the party whose property has been damaged. Instead, it is seeking to recover economic losses that relate to damage to other's property for which it may be subjected to liability. As such, its claims premised in tort, arising from an alleged breach of a contractual duty owed by NDS to Roamingwood, are the sort that are not cognizable under Pennsylvania law and should be dismissed.

### C. Motion to Dismiss Count IV for Violation of UTPCPL

In Count IV of the First Amended Complaint, Plaintiff is seeking to recover damages under the section of the UTPCPL that allows for a private cause of action to a certain class of persons. Section 201-9.2(a) of the statute provides for the recovery of damages by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property." Because the goods in question, i.e., check valves used in a utility application, are not "primarily for personal, family or household purposes," the UTPCPL does not create a private right of action on the part of Roamingwood.

The consumer protection statute does not extend a private right of action to goods or services for uses other than personal, family or household, and as a result a business or commercial entity cannot bring a private cause of action under the UTPCPL. *See e.g. Merv Swing Agency, Inc. v. Graham Co.*, 579 F. Supp. 429 (E.D. Pa. 1983). The Act limits private suits to goods purchased by consumers for their personal use. *Permagrain Products v. US Mat & Rubber Co.*, 489 F. Supp. 108 (E.D. Pa. 1980). As the Commonwealth Court stated in *Meyer v. Cmty. College of Beaver County,* 30 A.3d 587, 593 (Pa. Comw. 2011), "through this additional transaction-purpose filter, the General Assembly endeavored to focus recovery on consumer-based practices and to protect defendant 'persons,' including local agencies, from expansive liability."

The leading case in Pennsylvania on this issue is *Valley Forge Towers South Condominium v. RON-IKE Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. 1989). *See Elansari v. Best Buy, LP*, 2019 Pa. Super. Unpub. LEXIS 3933 (Pa. Super. 2019). In the *Valley Forge Towers* case, the Court noted that the primary purpose restriction found in Section 201-9.2 has been properly applied to preclude a cause of action by one business against another business for various types of unfair competition, citing to the federal court opinions listed previously. The Court stated that "[t]he restriction included in the act addresses itself solely to the purpose of the purchase, not the type of product purchased." 574 A.2d at 648. Importantly, the Court noted that the condominium association was acting "in a representative capacity on behalf of the unit owners when contracting," *id.*, and as a result concluded that the roof placed upon the condominium building was for personal, family, or household residential use by unit owners.

In an effort to frame itself as an association similar to the condominium association in the *Valley Forge Towers* case, Roamingwood has added the following assertions to its First Amended Complaint:

> 1. Plaintiff is a non-profit association that operates a water and sewer system exclusively for a planned residential community in the Poconos known as "The Hideout."
>
> 9. Plaintiff, Roamingwood Sewer & Water Association, is a duly registered Pennsylvania not-for-profit corporation, a cooperative operated under the laws of the Commonwealth of Pennsylvania and within the provisions of Section 501(c)(12) of the Internal Revenue Code. See Exhibit A at 1 (Roaming Sewer and Water Association By-Laws, May 14, 2003).

  10. As a non-profit cooperative, Roamingwood operates exclusively for the benefit of its members. Roamingwood's by-laws define its members as those owners of property at the residential community known as "The Hideout" in the Townships of Lake and Salem, Wayne County, Pennsylvania. Id. at 3.

  11. Roamingwood's by-laws set forth its purpose, inter alia, as "supply water and service to the residential development known as 'The Hideout'…to assure that the [Homeowner's] Association and its Members…fair and reasonable water and sewer rates; [and] to assure regular, continuous, and reliable and sewer service for the Association and for the Members..." Id. at 2.

  12. Roamingwood's business and property are managed and governed by a Board of Directors who are members (i.e, residential homeowners in "The Hideout" community) in good standing. Id. at 7. The Board of Directors has the power "to carry out all agreements of Roamingwood with its members in every way advantageous to Roamingwood representing the members collectively." Id. at 8. The Board is expressly charged with the responsibility to "[c]are, upkeep, and survey[]" the facilities of Roamingwood for the benefit of the residential community. Id. at 9.

  73. Plaintiff as an "association" is a "person" under the UTPCPL. 73 P.S. § 201-2(2) ("'Person' means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities") (emphasis added); see also id. at § 201-9.2(a) ("Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 [(73 P.S. § 201-3)] of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.") (emphasis added).

Despite this attempt on the part of Roamingwood to cloak itself in the same guise that the Court in the Valley Forge Towers case found sufficient to assert a claim under the UTPCPL, the reality is that the product in question here was used in by a business in a public utility application. The check valves were part of the development's sewage system that moved waste away from residences in the development. The allegations

11

regarding Roamingwood's status as an association does not change the fact that the product at issue is not one primarily for personal, family or household use. This case continues to involve the purchase of check valves by one business (Roamingwood) from another (NDS), and not as in *Valley Forge* by an entity "in a representative capacity on behalf of the unit owners when contracting."

The Pennsylvania Superior Court's recent decision in *Lewis v. Erie Ins. Exch.*, 2019 Pa. Super. Unpub. LEXIS 3209 (Pa. Super. 2019), is instructive. In that case, the plaintiff's business had purchased certain insurance policies on which the plaintiff made claim. The Court rejected the contention that the primary purpose for the purchase of the policies was to protect the plaintiff's family when they were in fact purchased by his business. The Court distinguished the *Valley Forge Towers* case, noting that the plaintiff therein was "a non-profit condominium association" acting "pursuant to its statutor[y] authorization to act as representative of the individual condominium unit owners," *Lewis*, at *21-22, and as such the roofing materials at issue placed on the homes of the unit owners were primarily for personal, family or household use. While the plaintiff in *Lewis* may have benefitted from the insurance purchased by his business, the Court reasoned that the insurance purchased by a business did not meet the primary purpose requirement of the statute.

Similarly, in the case of *Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119 (Pa. Super. 2004), the Superior Court rejected a claim under the UTPCPL brought by the owner of

residential property purchased as an investment.  In reaching the conclusion that no cognizable claim existed, the Court reasoned that "[t]he statute provides for the right of individuals to bring a private action when a 'person… purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal…' 73 P.S. § 201-9.2 (a) (emphasis added). In this case, RST Partners did not purchase the property for personal, family or household purposes. They purchased it as an investment property." *Lal,* at 125.  *See also DiLucido v. Terminix Int'l*, 676 A.2d 1237 (Pa. Super. 1996).

While the check valves installed in the sewer system at issue in this litigation may have provided benefit to the homeowners in the development, they clearly were purchased by a business (in the form of a not-for-profit corporation) from another business for a commercial as opposed to a personal, family or household purpose. Were the Court to permit Roamingwood to proceed on a claim under the UTPCPL claim, the floodgates would be open for all public utilities to bring claims under the UTPCPL for problematic goods or services under the guise that they ultimate benefit the homeowner. That was not the intention of the statute. Plaintiff has failed to state a cognizable claim under the UTPCPL.[1]

---

[1] Defendant would submit that Plaintiff's claim under the UTPCPL fails for a second reason, specifically the economic loss doctrine.  In the case of *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 673-74, 681 (3d Cir. 2002), the Court held that the economic loss doctrine precludes UTPCL claims for purely economic losses.  While the Pennsylvania Superior Court has reached a contrary conclusion, many federal district courts (including the Middle District of Pennsylvania) have continued to apply *Werwinski* absent a clear directive from either the Pennsylvania Supreme Court or the Third Circuit Court of Appeals.  *See Cesare v. Champion Petfoods* USA, 2:18-cv-00744 (W.D. Pa. December 20, 2019); *Zemba v. NVR, Inc.,* 2018 WL 3023220, at *3 n.5 (W.D. Pa. June 18, 2018*); Zeglen v. Northwestern Mutual*, 3:14-CV-00173 (M.D. Pa. Aug. 25, 2014); *McGuckin v. Allstate Fire & Cas. Ins. Co.,* 118 F.Supp.3d 716, 720 (E.D. Pa. 2015).

Plaintiff has revised its prayer for relief to remove a claim for punitive damages, and to limit the prayer for treble damages and attorneys' fees to the UTPCPL claim. Thus, to the extent that the Court finds that the UTPCPL claim is deficient, it should likewise strike the prayer for punitive damages and counsel fees from the First Amended Complaint.

### D.    Motion to Dismiss Claim for Replacement of All Check Valves

Under Pennsylvania law, a party may not recover speculative damages. *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 265 (3d Cir.), *cert. denied*, 516 U.S. 915 (1995). Speculative damages are "[p]rospective or anticipated damages from the acts or facts constituting the present cause of action, but which depend upon future developments which are contingent, conjectural, or improbable." *Black's Law Dictionary* 392 (6th ed. 1990). "Damages are considered speculative if 'the uncertainty concerns the fact of damages, not the amount.'" *Bensalem Township*, 57 F.3d at 265 *(quoting Carroll v. Philadelphia Housing Auth.*, 650 A.2d 1097 (Pa. Commw. 1994)).

In the present case, Roamingwood is seeking as damages the cost to replace all check valves in Stage 3 of the project including those that have not failed, which constitutes speculative damages.  The only new assertion in the First Amended Complaint that may relate to this is the statement in Paragraph 82 that the check valves "need to be replaced to avoid environmental contamination and property damage." However, this underscores that fact that these damages have not occurred, and that the

claims are therefore are purely speculative. The claim depends upon future developments which are contingent and conjectural, making it the very definition of speculative.

## V. RELIEF REQUESTED

Defendant, National Diversified Sales, Inc., respectfully requests that the Court sustain the Motion to Dismiss Plaintiff's First Amended Complaint, and enter the accompanying Order providing the relief sought.

                **POST & SCHELL, P.C.**

BY: _____
        GLENN M. CAMPBELL, ESQUIRE
        ATTY. I.D.: 51059
        E-MAIL: GCAMPBELL@POSTSCHELL.COM
        POST & SCHELL, P.C.
        1600 JFK BOULEVARD 13TH FL.
        PHILADELPHIA, PA 19103
        (215) 587-1000
        ATTORNEY FOR DEFENDANT, NATIONAL
        DIVERSIFIED SALES, INC.