# IN THE UNITED STATES DISTRICT COURT
# FOR MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROAMINGWOOD SEWER & WATER ASSOCIATION** | **CIVIL ACTION** |
| | NO. 1:20-cv-00640 |
| Plaintiff, | |
| v. | |
| **NATIONAL DIVERSIFIED SALES, INC.** | |
| Defendant | |

**REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANT, NATIONAL DIVERSIFIED SALES, INC. TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND 12(F)**

Defendant, National Diversified Sales, Inc., by and through its counsel, Post & Schell, P.C., hereby files this Reply Brief to Plaintiff's Response to Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f),.

## I.   MOTION TO STRIKE

Pursuant to Rule 12(f)[1], a Court should strike material from pleadings that bears "no possible relationship to the controversy and may cause prejudice to one of

---

[1] Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter is that which has no essential or important relationship to the claim for relief. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action. Scandalous pleading must `reflect cruelly' upon the defendant's moral character, use `repulsive language' or `detract from the dignity of the court." *Zaloga v. Provident Life Acc. Ins. Co.*, 671 F.Supp.2d 623 (2009), *quoting Donnelly v. Commonwealth Fin. Sys.*, No. 07-CV-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20)

the parties, or if the allegations confuse the issues." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F.Supp.2d 404, 407 (W.D. Pa. 2011). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

While Plaintiff correctly points out that striking a party's pleading is an extreme measure, that is not what Defendant is seeking here. Instead, Defendant is seeking only to have stricken certain assertions in the First Amended Complaint that bear no conceivable relationship to the present controversy.

### A. Purchase Price of NDS

Plaintiff has asserted in the First Amended Complaint that NORMA Group SE (a non-party to this litigation) paid a certain amount of money to purchase National Diversified Sales, Inc. In defense of this completely impertinent assertion, Plaintiff argues that Paragraph 14 of the First Amended Complaint "simply describes how and when NDS became a subsidiary of the NORMA Group and the considerable cost NORMA Group paid to acquire NDS." Response Brief, Page 9. NDS has no issue with the assertion that is has a parent company[2], and therefore the fact that Plaintiff has asserted that NORMA Group SE purchased NDS in 2014 is not

---

[2] The allegation is factually inaccurate. As reflected in Defendant's Rule 7.1 Disclosure, the parent corporation to National Diversified Sales, Inc., is in fact NORMA Pennsylvania, Inc., not NORMA Group SE as alleged.

the issue. Instead, it is the assertion of the purchase price that has no legitimate place in the pleadings in this case.

In an attempt to justify the allegation relating to the purchase price for the corporation, Plaintiff asserts that "NDS's substantial wealth" may be a factor to be considered on the claim for treble damages suggesting that the purchase price is somehow indicative of NDS' wealth. However the purchase price for the company in 2014 and the current wealth of NDS are completely different propositions. While the purchase price may reflect upon the wealth of those who sold the corporate assets, it hardly reflects the current wealth of NDS as a subsidiary of the NORMA Group.

Plaintiff also asserts that NDS has failed to address the check valve failures that have occurred to date, which again has no connection of any sort to the purchase price paid for the company by its parent. The purchase price for NDS in 2014 has no logical connection to Plaintiff's dissatisfaction with NDS's response to the check valve failures. There is simply no justification for including the purchase price in the First Amended Complaint other than to suggest that NDS is a huge corporation intent on causing harm to Plaintiff, a suggestion that clearly prejudices NDS.

**B. Prior Litigation**

"Immaterial matter is that which has no essential or important relationship to the claim for relief." *Zaloga v. Provident Life Acc. Ins. Co.,* 671 F.Supp.2d 623

(2009), *quoting Donnelly v. Commonwealth Fin. Sys.*, No. 07-CV-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20).  Reference to the *Postil* litigation has no relationship, essential or otherwise, to Plaintiff's claim for relief and should be stricken.

Plaintiff seeks to justify the reference to another lawsuit against NDS involving a check valve in Paragraph 32 of the First Amended Complaint by asserting that the prior suit demonstrates notice on the part of NDS of potential manufacturing or design problems with its check valve flapper, and that NDS has a history of refusing to take responsibility for valid claims related to its check valves. However, as Defendant has demonstrated in its Motion to Dismiss, the *Postil* litigation involved a different valve in a different application made by a different company (which NDS later acquired) that was determined by a jury to have failed as a result of a wholly different circumstance.

There simply is not connection that warrants inclusion of allegations relating to that litigation in the present case.  The allegations relating to this prior litigation are therefore immaterial and should be stricken.

## II. Motion to Dismiss

### A. Economic Loss Doctrine

Defendant is seeking the dismissal of Plaintiff's tort claims on the basis of the economic loss doctrine.  Plaintiff in response argues that the motion should be

denied because (1) its claim is not solely for economic loss and (2) the economic loss doctrine does not apply to its claims in the wake of the recent Pennsylvania Supreme Court decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018). Neither argument warrants the denial of Defendant's motion regarding Plaintiff's tort claims.

Plaintiff first argues that it has asserted a claim for damages other than for a pure economic loss, citing to damage to "other property" allegedly resulting from Defendant's product. That other property, however, is property in which Plaintiff has no legal interest, i.e., it is the property of homeowners allegedly impacted by the check valve failures.

The present case is thus clearly distinguishable from *2-J Corp. v. Tice*, 126 F.3d 539, 543 (3d Cir. 1997), a case upon which Plaintiff relies. *2-J Corp. v. Tice* involved property damage to contents of a warehouse when the building collapsed. Unlike the current Plaintiff, the plaintiff in that case owned the property stored in the warehouse. The question presented to the Court in *2-J Corp.* was whether the economic loss doctrine, which precluded recovery in tort for the loss of the product itself, should be extended to "other property." Finding that the doctrine did not bar recovery in tort for damage to property other than the product itself, the Court in *2-J Corp.* reversed the order of summary judgment entered in favor of the defendant.

In contrast, the "other property" which Plaintiff Roamingwood is claiming as damage is the property of others in which it has no interest. The other property

allegedly damaged in the present case is property owned by residents of the Hideout Development. Plaintiff is asserting that it may be liable for those damages, and while this may be true it is the epitome of an economic loss. Thus, while Plaintiff tries to suggest that it is seeking damages outside of those precluded by the economic loss doctrine, that is in fact not the case.

Plaintiff further asserts that the recent Pennsylvania Supreme Court decision in *Dittman* undermines Defendant's argument regarding the economic loss doctrine. Plaintiff argues that the doctrine bars a tort claim only if the duty owed by the defendant arises under a contract between the parties. However, not only should *Dittman* not be read as restrictive as Plaintiff suggests, several district courts considering *Dittman* have found that it bars tort claims in scenarios analogous to the present case.

In *Duhring Res. Co. v. United States*, 775 Fed. Appx. 742 (3d. Cir. 2019), the Third Circuit Court of Appeals discussed the *Dittman* decision. The Court noted that *Dittman* "aligns" with prior cases by the Pennsylvania Supreme Court relating to the economic loss doctrine. The Court cited *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 604 Pa. 50, 985 A.2d 840, 841 n.3 (Pa. 2009), for the proposition that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." The decision by the Court in *Duhring* clearly suggests that the holding of the Pennsylvania Supreme

Court in *Excavation Techs* remains viable post-*Dittman*, and that a claim sounding in negligence cannot stand for a purely economic loss where the basis of the relationship between the parties is contractual in nature.

Plaintiff has cited to the recent decision by this Court in *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394 (M.D. Pa. 2019), to support its position. Plaintiff in *Silva* asserted claims for intentional and negligent misrepresentation and breach of express and implied warranties, among others, based upon false and misleading representations made on the labels of nutritional supplements sold to them by the defendants. The plaintiff did not claim to have suffered any personal injuries or property damage. The defendant moved to dismiss the plaintiffs' fraud and other tort claims based upon the economic loss doctrine. Although the alleged misrepresentations were made on the label of the product, the District Court found that they were not extrinsic to the parties' agreement, and as a result were barred by the economic loss doctrine.

*Silva* was followed by the Court in *Lutheran Home for the Aged v. Forest River, Inc.*, 2020 U.S. Dist. LEXIS 78190 (W.D. Pa. 2020). That case included claims of fraud and breach of warranty in connection with the purchase of a defective recreational vehicle. The fraud claims were premised upon whether the manufacturer had performed certain tests in the manufacturing process that would have revealed the defects if actually performed. The Court found that the duty owed

by the defendant did not arise independent of its contractual duties, and as such the tort claim for fraud was barred by the economic loss doctrine under *Dittman*.

Similarly, *Cesare v. Champion Petfoods United States, INC.*, 2019 U.S. Dist. LEXIS 218715 (W.D. Pa. 2019), involved a claim sounding in tort for representations made by the defendant regarding its product, in this case dog food. Noting that "[t]he court in *Dittman* found a specific carve-out under a negligence theory where a legal duty exists independently from any contractual obligations between the parties," *Cesare* at *25, the Court in *Cesare* found the carve-out to be inapplicable where the duty owed by the defendant was not independent of the contractual relationship between the parties. As the nature of the relationship between the parties was premised in contract, the economic loss doctrine applied.

The claims by Roamingwood Sewer & Water Association against NDS, like the claims by the plaintiffs in *Silva*, *Lutheran Home*, and *Cesare*, revolve around the sale of a product alleged to have caused purely economic losses to the plaintiff. Plaintiff has acknowledged that its claims are contractual in nature, revolving around the sale of a product. It asserted in its Response Brief that, "[w]hen Plaintiff purchased NDS's check valves it did so at the direction of its Board of Directors, who themselves are community members empowered by Plaintiff's by-laws to enter into contracts on behalf of the members." Response Brief, page 19. Indeed, absent

a contractual relationship, there would be no basis for Plaintiff to assert a claim for breach of warranty as it has in Count II of the First Amended Complaint.

In *Silva, Lutheran Home* and *Cesare,* the Courts found that the duty owed by the defendant was not independent of the contractual relationship between the parties, and as such ruled that *Dittman* did not impact the application of the economic loss doctrine to the tort claims. In each case, the Court granted the motion to dismiss the tort-based claims. This Court should do the same regarding NDS' motion as the claims for damage by Plaintiff are limited to economic losses only premised upon duties owed by NDS to Plaintiff in the parties' contractual relationship.

### B. Violation of UTPCPL

Defendant's motion to dismiss relative to Plaintiff's claims under the UTPCPL is two-fold. First, Defendant asserts that the economic loss doctrine serves to bar those claims. Second, Defendant asserts that the product in question is not one primarily for personal, family or household use as required by the Pennsylvania consumer protection law.

NDS concedes that there remains contradiction between federal and Pennsylvania state court precedent on the first issue of whether a UTPCPL claim is barred by the economic loss doctrine. The Third Circuit Court of Appeals in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), held that the economic

loss doctrine bars claims under the UTPCPL while the Pennsylvania Superior Court has more recently concluded otherwise. The Pennsylvania Supreme Court has not decided the issue, and as such there is a distinct split between federal district courts on whether *Werwinski* continues to be controlling on this issue in federal court.

The cases that have addressed this issue are noted in Defendant's Brief in support of its Motion to Dismiss. The recent decisions in *Cesare v. Champion Petfoods United States, INC.*, 2019 U.S. Dist. LEXIS 218715(W.D. Pa.)(following *Werwinski*), and *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394 (M.D. Pa. 2019)(following Pennsylvania Superior Court rulings) only serve to underscore the differing views. Defendant would submit that, until such time as either the Third Circuit Court of Appeals or the Pennsylvania Supreme Court resolve the question, this Court is bound to follow the controlling precedent from the Third Circuit Court of Appeals on this issue.

Turning to the question of whether the check valves manufactured by NDS, as utilized in the Hideout Development by Roamingwood Sewer and Water Association, constitute consumer products, Plaintiff first argues that the UTPCPL applies to incorporated or unincorporated associations such as Roamingwood. 73 P.S. §201-2(2)(definition of "person"). Defendant does not dispute this point. *See Valley Forge Towers South Condominium v. RON-IKE Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. 1989)(concluding that an unincorporated condominium

association met the definition of "person"). NDS is not asserting that Plaintiff Roamingwood is not a "person" for purposes of the statute.

Instead, it is the position of NDS that Roamingwood's UTPCPL claim fails the primary purpose restriction contained in the statute. Section 201-9.2(a) provides for the recovery of damages by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property." The question therefore revolves around whether Roamingwood purchased the subject check valves primarily for personal, family or household purposes as a legal representative of the homeowners it serves. If not, it has no basis to bring this claim.

In *Ziccarelli v. CSW Fin., LLC,* 2015 Pa. Dist. & Cnty. Dec. LEXIS 18268 (Allegheny CCP 2015), the Court stated that "there is no bright-line test to be applied" in making the determination of whether the product's purpose is primarily for personal, family or household purposes. *Id.*, at *9. The Court in *Valley Forge Towers* stated that "[t]he restriction included in the act addresses itself solely to the purpose of the purchase, not the type of product purchased." 574 A.2d at 648. *See also Universal Steel Bldgs. Corp. v. Reagan*, 2019 Pa. Super. Unpub. LEXIS 4192 (Pa. Super. 2019). Without question, purchases for business purposes are not actionable under the UTPCPL. *Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 446 (Pa. 2001). Indeed, in the *Valley Forge Towers* case, the Court recognized that

the primary purpose restriction found in Section 201-9.2 has been properly applied to preclude a cause of action by one business against another business for various types of unfair competition.

The Court in *Valley Forge Towers* allowed the Association to proceed based upon its representative capacity on behalf of unit owners. In contrast, the Superior Court in the case of *Cumberland Valley Sch. Dist. v. Hall-Kimbrell Envtl. Servs*., 433 Pa. Super. 38, 639 A.2d 1199 (1994), dismissed the UTPCPL claim by a school district relating to environmental services provided by the defendant. The Court first ruled that the school district plaintiff was not the legal representative of its taxpayers and students, and therefore could not bring a claim on their behalf under the UTPCPL. The Court further noted that the primary purpose of the purchase of environmental services by the school district was not for personal, family or household use. The Court stated:

> It would entail a far stretch for this court to accept Cumberland's argument that the asbestos abatement services at issue were purchased primarily for the personal, family or household benefit of its taxpayers and students in having adequate facilities for education, community meetings, athletics and other non-business uses. Appellant's own description of the uses to which its school buildings were put evinces a governmental purpose in providing the public a safe school with architectural and structural integrity. The obligation of taxpayers to pay for and of students to attend such a school as a community facility does not transform the school district's legal duty to provide it into a non-governmental purpose. Taxpayers and students have interests in safe and sound schools qua citizens who financially support the educational program and who benefit from it. Neither of these interests is of a "personal, family or household" purpose mandated by § 201-9.2 of the UTPCPL.

639 A.2d at 1201-1202 (citations omitted). The Court thus concluded that the school district "acted pursuant to a public purpose" 639 A.2d at 1202, and thus sustained the dismissal of the UTPCPL claim.

Similarly, in the case of *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 239 (3d Cir. 2002), a doctor sued the manufacturer of bone screws used by the doctor in spinal fusion surgeries. The Third Circuit Court of Appeal held that the doctor could not bring a UTPCPL claim against the screw manufacturer because he neither purchased the screws nor made the decision to use the screws in his representative capacity for his patients. Similarly in the case of *Car Sense, Inc. v. Am. Special Risk, LLC*, 56 F. Supp. 3d 686 (E.D.Pa. 2014), the Court similarly rejected an argument made by Car Sense that it could bring a UTPCPL claim in its representative capacity on behalf of its customers.

The analysis in the present case thus turns on whether Plaintiff "purchased the goods and services at issue primarily for the personal, family or household purposes of the consumers for whom [it was] the legal representative[]." *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002). Defendant NDS would submit that the purpose for which its check valves were used, and Roamingwood's position as a purchaser of those check valves, is more akin to the school district in *Cumberland Valley* than the condominium association in *Valley*

*Forge Towers*. As such, the purchase was not for a personal, family or household purpose.

Plaintiff asserts that it is a non-profit cooperative association that operates exclusively for the benefit of its members who are the owners of residential property in a private community. Plaintiff asserts that it is not a public utility, and instead its sole purpose is to supply water and sewer service to its members at a reasonable rate. Referencing the by-laws for the Association, it asserts that its Board of Directors had the authority to enter into contracts on behalf of members, and in that capacity purchased the check valves used in the project.

Plaintiff's First Amended Complaint is contradicted by Plaintiff's own by-laws. Indeed, its by-laws, which are referenced throughout the First Amended Complaint state that one of the purposes of the Association was "[t]o lease the two utilities [water and sewer] to the South Wayne County Water and Sewer Authority established by the County Commissioners of Wayne County, which authority would in turn enter into an Agreement with this Corporation to operate and manage the two utilities." Plaintiff is thus acting as an agent of the South Wayne County Water and Sewer Authority, a public utility, with the purpose of providing a service that is traditionally that of a public utility. Plaintiff's purchase of the Defendant's check valves did not constitute an individual purchase decision by a homeowner for personal use, but rather a purchase by a public utility for a public use. Its function

14

thus differs materially from the condominium association in Valley Forge Towers, which acted solely in the interest of the unit owners that comprised the association.

Based upon the foregoing, Defendant would submit that Plaintiff Roamingwood has no standing to bring a claim for damages under the UTPCPL. As such, its consumer protection law claim should be dismissed.

                              **POST & SCHELL, P.C.**

BY: _____
        GLENN M. CAMPBELL, ESQUIRE
        ATTY. I.D.:  51059
        E-MAIL:  GCAMPBELL@POSTSCHELL.COM
        POST & SCHELL, P.C.
        1600 JFK BOULEVARD 13TH FL.
        PHILADELPHIA, PA  19103
        (215) 587-1000
        ATTORNEY FOR DEFENDANT, NATIONAL
        DIVERSIFIED SALES, INC.

# CERTIFICATE OF SERVICE

I, Glenn M. Campbell, Esquire, hereby states that a true and correct copy of the foregoing Reply Brief was served upon counsel for record via electronic filing.

                                              **POST & SCHELL, P.C.**
                                              By:

Dated: June 11, 2020                     GLENN M. CAMPBELL, ESQUIRE
                                              ATTY. I.D.: 51059
                                              E-MAIL: GCAMPBELL@POSTSCHELL.COM
                                              POST & SCHELL, P.C.
                                              1600 JFK BOULEVARD 13TH FL.
                                              PHILADELPHIA, PA 19103
                                              (215) 587-1000