UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Roamingwood Sewer & Water Association,**<br><br>Plaintiff.<br><br>v.<br><br>**National Diversified Sales, Inc.**<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>**The Lateral Connection Corp., and James T. O'Hara, Inc.** | No. 20-cv-00640-JPW<br><br>Honorable Jennifer P. Wilson |

**BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS OF DEFENDANT, NATIONAL DIVERSIFIED SALES, INC., PURSUANT TO FEDERAL RULEOF CIVIL PROCEDURE 12(B)(1)**

**I.  INTRODUCTION**

Plaintiff, Roamingwood Sewer & Water Association ("Roamingwood"), filed this action on April 17, 2020 and filed its First Amended Complaint on May 12, 2020. In response, Defendant/Third-Party Plaintiff, National Diversified Sales, Inc. ("NDS"), filed a Motion to Dismiss based on the economic loss doctrine and Pennsylvania state law regarding ascertainment of damages on May 19, 2020.[1] This

---

[1] While NDS' motion to dismiss was pending, NDS named The Lateral Connection, Corp. and James T. O'Hara, Inc. as third-party defendants. *See* Dkt. 24.

1

Court ultimately denied NDS' Motion to Dismiss on December 21, 2020. *See* Dkt. 29.

Since the Court's denial on December 21, 2020, the United States Supreme Court decided *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) on June 25, 2021. *TransUnion* is directly relevant to claims in this case because the Supreme Court narrows the standard a plaintiff must meet to prove Article III standing by holding that a defendant's alleged statutory violation alone does not automatically confer standing on a plaintiff. In light of the Supreme Court's holding in *TransUnion*, NDS brings this motion to dismiss certain claims brought by Plaintiff related to alleged statutory violations where no injury in fact has occurred for lack of Article III standing.

## II.    STATEMENT OF FACTS

Plaintiff Roamingwood is seeking monetary relief in connection with damages allegedly sustained because of the failure of certain check valves manufactured by Defendant NDS. The check valves were used in a neighborhood sewer replacement project undertaken by Plaintiff, which to Defendant's knowledge or belief was completed in early 2018, at residential community known as "The Hideout," located in Wayne County, Pennsylvania.  Plaintiff alleges that 800 check valves were installed during "Stage 3" of the project of which it was necessary to replace 33 because of alleged failure. Plaintiff avers the need to dig-up and replace all Phase 3 check valves because of the risk of property damage and environmental concerns. Plaintiff alleges that the check valves have a uniform defect relating to the flapper mechanism in the valves.

## III. STATEMENT OF QUESTION INVOLVED

1. Whether Plaintiff has Article III standing to assert violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") related to check valves that are functioning properly.

## IV. ARGUMENT

### A. Plaintiff Bears the Burden Of Demonstrating Article III Standing Under Rule 12(b)(1)

"A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). There are two types of 12(b)(1) motions: ones that present a facial attack and ones that present a factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge contests the sufficiency of the pleadings, while a factual challenge attacks "the existence of subject matter jurisdiction in fact." *Id*.

When deciding a factual attack, a court may consider and weigh evidence outside the pleadings. *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Furthermore, "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56" in adjudicating a factual attack. *Mortensen*, 549 F.2d at 891. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed

3

material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims … the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id*; *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) ("the plaintiffs bear the burden of demonstrating that they have standing.").

    **B.    Plaintiff Has No Standing to Sue on Behalf of Homeowners Whose Check Valves Have Not Failed Because Those Homeowners Have No Concrete or Particularized Injury.**

The federal judicial power is confined to resolving "Cases" and "Controversies." *TransUnion*, 141 S. Ct. at 2203 citing *Raines v. Byrd*, 521 U.S. 811, 117 S. Ct. 2312 (1997). "For there to be a case or controversy … the plaintiff must have … standing," which the plaintiff must prove. *Id.* The "irreducible constitutional minimum" of standing consists of three elements: 1) the plaintiff must have suffered an injury in fact; 2) that is fairly traceable to the challenged conduct of the defendant; and 3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-8 (2016); *see also TransUnion*, 141 S. Ct. at 2203. Of the three elements of standing, injury in fact is the first and foremost. *Id.*

An injury in fact can establish standing when it constitutes a "concrete and particularized" and "actual or imminent" injury to a legally protected interest. *Spokeo*, 136 S. Ct. 1547-8 citing *Lujan v. Defenders of Wildlife*, 1504 U.S. 555, 560 (1992). A concrete injury must be *de facto*; it must actually exist. *See Spokeo*, 136 S. Ct. at 1548.

Plaintiff Roamingwood does not have a concrete injury as required under *Spokeo* because the speculative failure of the valves is not concrete—the injury does not actually

exist. Roamingwood claims that it has suffered injury because certain check valves may someday fail and, despite currently functioning properly, the risk that the valves may fail constitutes a violation of Pennsylvania's UTPCPL. In the newly-decided *TransUnion* opinion, however, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 citing *Spokeo v. Robinson*, 578 U.S. at 341. Article III standing still requires "a concrete injury even in the context of a statutory violation." *Id*. Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 141 S. Ct. at 2208. Thus, Plaintiff must prove that it has standing not only for check valves that have failed, but also for check valves that are functioning properly. Under the *TransUnion* ruling, the Plaintiff will not meet this burden for the check valves that are functioning properly.

      **1.    Standing Does Not Exist for Check Valves Functioning Properly Because Plaintiff Has Not Suffered a Concrete Injury**

The *TransUnion* case is directly on point to claims in this case and this Court should follow its reasoning in holding that Plaintiff lacks standing to pursue claims for properly-functioning check valves.

In *TransUnion*, the Supreme Court held that members of a class lacked standing to pursue their claims against TransUnion because the class members had not suffered a

concrete injury. The TransUnion facts are analogous to this case. TransUnion maintained credit files on members of the plaintiffs' class, which inaccurately stated that the class members were banned from doing business in the United States. These inaccurate credit files, however, were never disseminated to, or accessed by, any third-party TransUnion data consumers or customers. *TransUnion*, 141 S. Ct. at 2209. The *TransUnion* plaintiffs argued that "the … class members suffered a concrete injury for Article III purposes because the existence of misleading [information] in their internal credit files exposed them to a material risk that the information would be disseminated in the future to third parties and thereby cause them harm." *Id.* at 2210. The Supreme Court rejected this position stating (quoting from TransUnion's argument) that "**if an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages.**" *Id.* at 2211 (emphasis added). Thus, the Supreme Court rejected the notion that the risk of future harm alone confers standing on all class members. The Supreme Court held this despite the fact that the same risk of future harm had in some cases actually materialized when the false information in some class members' files was published (and therefore caused those individuals a concrete injury). *Id*.

In the present case, Roamingwood's damages theory mirrors the underlying theory of the originally asserted *TransUnion* plaintiff class, in that Roamingwood mixes and

conflates concrete harms actually incurred with potential, future harms that have not occurred and are therefore not concrete. If a certain subset of check valves have caused injuries in fact[2], those injuries are analogous to those sustained by the *TransUnion* class members who had false information about them actually disseminated to third parties. Similarly, the lack of concrete injuries from check valves that are functioning properly is analogous to the lack of concrete injuries from false information never disseminated (despite the risk that it in the future it might be), the fact of which prevented those class members from meeting the burden of Article III standing.

 Plaintiff has pleaded that the failed check valves have all failed in a uniform fashion and that all the check valves contain a common defect. However, because the present motion is a factual attack on standing, "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen*, 549 F.2d at 891. In *TransUnion* the Supreme Court reduced the class and claims by partitioning them into those with concrete harms and those with only the risk of harm, the latter of which the Court dismissed. The Court here should similarly consider and hold that claims related to the check valves be partitioned into those that Plaintiff alleged failed, causing concrete harm, and those that have not failed and carry only the risk of potential future harm. To date, of the 800 check valves Plaintiff stated were installed in Phase 3, only 33 are alleged to have failed. Therefore, the remaining 767 valves – which are currently working – carry only the *risk* of failure in the future.

---

[2] NDS admits that as pertains to any failed valves, Plaintiff has met the requirements for a concrete injury for standing purposes only and does not admit any liability or waive any defenses in this litigation.

Plaintiff's concern for future failures is not a concrete injury and therefore Plaintiff lacks Article III standing regarding its claims stemming from those check valves.

Moreover, in the unlikely event that a check valve does fail, causing a homeowner to suffer a concrete harm, "then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages." *TransUnion*, 141 S. Ct. at 2211. In other words, Plaintiff can seek damages for valves that fail, as it has already done in this lawsuit, but does not have standing to sue for valves that may fail sometime in the future. Thus, Plaintiff's claims relating to properly functioning check valves should be dismissed for lack of standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

### 2. The Court's Previous Holding on NDS's Motion to Dismiss Does Not Apply or Prevent Dismissal Under TransUnion.

This Court's previous holding that "Roamingwood has shown a reasonable basis for its damages claim with respect to the cost of replacement for the remaining stage-three check valves" is not an impediment here, as that holding was based on Pennsylvania state law relating to damages and *TransUnion* create a new precedent. *Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 210 (M.D. Pa. 2020) (Wilson, J.). Here, the question is not whether Roamingwood's damages are calculable, or whether Plaintiff's pleadings must be accepted as true, but whether Roamingwood's injuries related to the functioning check valves is sufficiently concrete to confer Article III standing. *See TransUnion*, 141 S. Ct. 2190 (2021); *See also Thorne*,

8

930 F.3d 879 (3d Cir. 2020). It is not.

## V. CONCLUSION

Defendant, National Diversified Sales, Inc., respectfully requests that the Court sustain its Partial Motion to Dismiss Plaintiff's claims related to properly functioning check valves on the basis that these claims are insufficiently concrete to confer Article III standing. Here, Plaintiff has only suffered a risk of future harm that the properly functioning check valves will fail, which does not confer Article III standing, as recently clarified in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021). NDS further requests that the Court enter the accompanying Order providing the relief sought.

Dated: September 14, 2021     Respectfully submitted,

KLEIN THOMAS & LEE LLC

/s/ Ian K. Edwards
Fred J. Fresard (*pro hac vice*)
Ian K. Edwards (*pro hac vice*)
Klein Thomas & Lee LLC
101 West Big Beaver Rd
Suite 1400
Troy, MI 48084
(248) 509-9271
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com

**Post & Schell, P.C.**
Glenn M. Campbell, Esquire
I.D.# 51059
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103-2808
215-587-1444
gcampbell@postschell.com

Attorneys for National Diversified Sales, Inc.

## **CERTIFICATE OF SERVICE**

I, Ian K. Edwards, served the foregoing Brief in Support of NDS's Partial Motion to Dismiss on all counsel of record by filing it on the Court's ECF filing system on September 14, 2021.

>                        */s/ Ian K. Edwards*
>                        Ian K. Edwards